UNITED STATES, Appellee,

v.

LeRoy MORRIS, Jr., Sergeant First
Class, U.S. Army, Appellant.

No. 97–0474.
Crim.App. No. 9500905.

U.S. Court of Appeals for
the Armed Forces.

Argued March 4, 1998.

Decided Sept. 29, 1998.

For Appellant: *Captain Thomas Jay Barrett* (argued); *Colonel John T. Phelps, III, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief); *Captain John M. Head.*

For Appellee: *Captain Steven H. Levin* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III,* and *Major Lyle D. Jentzer* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by a military judge sitting alone of conspiracy to commit larceny, wrongful appropriation, and larceny (2 specifications), in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 USC §§ 881 and 921, respectively. The convening authority approved the sentence of a dishonorable discharge, 5 years' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 44 MJ 841 (1996).

We granted review of the following issues:

### I

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY SUBSTITUTING ITS JUDGMENT FOR THAT OF THE TRIAL JUDGE WHEN IT RULED THAT THE MILITARY JUDGE ERRED IN SUPPRESSING APPELLANT'S STATEMENT TO CID.

### II

WHETHER THE ARMY COURT OF CRIMINAL APPEALS EXCEEDED ITS JURISDICTION UNDER ARTICLE 66, UCMJ, WHEN IT CONSIDERED AND REVERSED THE MILITARY JUDGE'S RULING SUPPRESSING APPELLANT'S STATEMENT TO CID.

### III

WHETHER THE GOVERNMENT WAIVED CONSIDERATION OF THE PROPRIETY OF THE MILITARY JUDGE'S RULING SUPPRESSING APPELLANT'S STATEMENT TO CID BY FAILING TO MAKE A TIMELY ARTICLE 62, UCMJ, APPEAL.

### IV

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY FAILING TO FOLLOW THE "LAW OF THE CASE" DOCTRINE WHEN IT REVERSED THE MILITARY JUDGE'S RULING SUPPRESSING APPELLANT'S STATEMENT TO CID.

### V

WHETHER CONGRESS'S ENACTMENT OF ARTICLE 62, UCMJ, OVERRULES *UNITED STATES V. NARGI,* 2 MJ 96 (CMA 1977), AND ITS PROGENY.

### VI

WHETHER THE GOVERNMENT FAILED TO SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT ITS DECISION TO PROSECUTE AND THE EVIDENCE AGAINST APPELLANT WERE UNTAINTED BY APPELLANT'S UNLAWFULLY INDUCED STATEMENTS.

### VII

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING THE TESTIMONY OF SFC STROUP.

We hold that the Court of Criminal Appeals did not err in holding that the military judge erroneously suppressed appellant's confession. We also hold that Article 62, UCMJ, 10 USC § 862, did not overrule *Nargi.*

## FACTS

Mr. Woytaszek, a commissary employee in Yongsan, Korea, reported to Special Agent (SA) Brian J. McGwire that there had been black-marketing and larceny of commissary goods. Mr. Woytaszek had learned information from Mrs. Rivera, who worked as a cashier at the commissary, that Sergeant First Class (SFC) Stroup, the commissary manager, and appellant, his friend were stealing money and meat from. The information was corroborated, and the Criminal Investigation Command (CID) agents decided to set up surveillance. While on a lookout, SA McGwire saw a van depart from the commissary. Appellant was driving the van.

When the van left the commissary, SA McGwire followed it. SA McGwire shouted for appellant to stop and then blocked the road, forcing him to do so. Upon approaching the van, he observed ten boxes of commissary meat inside the van.

After appellant was arrested for transporting the ten cases of stolen meat, CID agents orally advised him of his rights under Article 31(b), UCMJ, 10 USC § 831(b). After waiving his rights, appellant made oral admissions to SA McGwire. At some point, SA McGwire told appellant, "You are in a lot of trouble." Appellant asked, "What can I do to get out of trouble?" SA McGwire replied, "If you help us, we will help you."

Based on this exchange, the military judge determined that appellant's oral statement was unlawfully induced. After the judge suppressed the statement, trial defense counsel moved to dismiss the Charges and specifications because they were tainted by appellant's unlawfully induced statements. The trial judge denied the defense motion.

Before the Court of Criminal Appeals, appellant asserted that the use of the evidence derived from these statements and the testimony of his fellow co-conspirators tainted his prosecution. The court below examined the underlying issue and held that the judge erred in ruling these statements were inadmissible, finding that advising appellant to cooperate did not amount to unlawful inducement. 44 MJ at 842–43.

Because we hold that the court below was correct in holding that appellant's confession was voluntary and, thus, that the Charges and specifications in question were not based on illegally obtained evidence, we need not reach Issues VI and VII.

## DISCUSSION

In 1983, Congress amended Article 62(a)(1) to permit the Government to appeal "an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceeding." Military Justice Act of 1983, Pub.L. No. 98–209, § 5(c)(1), 97 Stat. 1398 (1983). Neither Article 62 nor RCM 908, Manual for Courts–Martial, United States (1995 ed.), requires the Government to appeal a ruling of a judge if it is contrary to the Government's contentions. As to Issue III, while the Government unsuccessfully sought to admit appellant's confession at trial, its failure to appeal does not preclude this Court or the court below from looking at the impact of the underlying issue on the Charges and specifications. *See United States v. DeLeon,* 5 USCMA 747, 756–57, 19 CMR 43, 52–53 (1955).

Regarding Issue II, we disagree with appellant's assertion that the Court of Criminal Appeals "reversed" the military judge's ruling. The court below did not "reverse" the military judge; nor did it admit the suppressed evidence. It merely held that the military judge's ruling was erroneous. Likewise, we are not admitting appellant's confession as evidence, but are merely examining the military judge's ruling to determine if other evidence was tainted. As this Court explained in *United States v. DeLeon, supra:*

> To support the conviction, the Government may also properly challenge erroneous rulings by the law officer [now the military judge]. It may do so not for the purpose

230

of obtaining consideration by the appellate tribunal of the excluded evidence, but for the purpose of showing that other evidence which has been admitted is not illegally tainted.

■ As to Issue IV, the court below did not violate the "law of the case" doctrine. The "law of the case" doctrine describes many different factual situations. *See, e.g., Jones v. Cassens Transport,* 982 F.2d 983, 987 (6th Cir.1993) (on remand, the trial court is bound by the law of the case as established by the higher appellate court); *Shore v. Warden Stateville Prison,* 942 F.2d 1117, 1123 (7th Cir.1991) (prior appellate decisions involving the same defendant are binding in *habeas corpus* proceedings). In the past, this Court has noted that "an appellate court may consider the propriety of a trial ruling excluding evidence to the extent that the ruling affects other evidence which was not excluded[.]" *United States v. Starr,* 1 MJ 186, 190 (CMA 1975); *see also United States v. Nargi,* 2 MJ 96, 98 (CMA 1977). Under the "law of the case" doctrine, an unchallenged ruling "constitutes the law of the case and binds the parties." *United States v. Grooters,* 39 MJ 269, 273 (CMA 1994). The doctrine applies to rulings, not the underlying legal rationale for the rulings. Because the court below did not purport to "reverse" the military judge's ruling on the motion to suppress appellant's statement, it did not violate the "law of the case" doctrine.

■ With respect to Issue V, we hold that Article 62 did not overrule this Court's decision in *United States v. Nargi, supra;* rather, Article 62 and *Nargi* are complementary. *Nargi* allows an appellate court to examine the underlying basis for a ruling excluding evidence, but *Nargi* does not empower an appellate court to admit evidence. Article 62 complements *Nargi* by providing a procedure for reversing a ruling on admissibility and compelling the military judge to admit evidence.

■ The underlying issue, the voluntariness of the confession, is reviewed *de novo,* after examining the totality of the circumstances. *See, e.g., United States v. Bubonics,* 45 MJ 93, 94 (1996). Courts examine a number of factors to determine whether a confession is voluntary, "including rights warnings, the length of the interrogation, the characteristics of the individual, including age and education, and the nature of the police conduct, including threats, physical abuse, and incommunicado detention." *United States v. Soifer,* 47 MJ 425, 429–30 (1998) (footnotes omitted); *see also United States v. Murphy,* 39 MJ 486, 488–89 (CMA 1994).

■ We agree with the court below and hold that appellant's confession was voluntary, in light of these factors: appellant is a mature and experienced soldier who waived his rights after proper warnings and agreed to talk to the investigators; he completed 12 years of education; and he was not subject to a lengthy interrogation, physical abuse, threats, or incommunicado detention that would force him to tell an untruth.

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

The law-of-the-case doctrine did not preclude the Court of Criminal Appeals from examining the military judge's ruling in this case. Judge Lamberth, writing recently for a majority of this Court, stated:

Although the Judge Advocate General has not certified for this Court's review the holding of the Court of Military Review that Colonel Grant's expert opinion testimony of appellant's future dangerousness was inadmissible, *see* Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989), this Court may rule on this issue. *But cf. United States v. Sales,* 22 MJ 305, 307 (CMA 1986)(CMR's holding that findings were multiplicious "constitutes the law of the case and binds the parties" absent certification of issue by the Judge Advocate General). The law-of-the-case doctrine does not preclude this Court, once the case has been properly granted for review, from considering an erroneous conclusion of law made by the Court of Military Review. *See Christian-*

*son v. Colt Industries Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

*United States v. Williams,* 41 MJ 134, 135 n. 2 (CMA 1994); *see also United States v. Morris,* 13 MJ 297, 299 n. 3 (CMA 1982) (Everett, C.J., concurring in the result). This same rule applies to the Courts of Criminal Appeals. *See United States v. Starr,* 1 MJ 186, 190 (CMA 1975).

With regard to the "taint" issues, which were also granted review by this Court, appellant argues first that the Government failed to show that its decision to prosecute him was untainted by his unlawfully induced statements. *See United States v. Kimble,* 33 MJ 284, 291 (CMA 1991); *see also Kastigar v. United States,* 406 U.S. 441, 460–61, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). I disagree.

The record shows by a preponderance of the evidence that the decision to prosecute appellant arose from a source independent of his unlawfully induced statements and that investigative agents would have inevitably discovered appellant's crimes. *See Costello v. United States,* 365 U.S. 265, 280, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *see generally Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (adopting inevitable-discovery exception to exclusionary rule). CID agents, acting on a tip, set up surveillance outside the Camp Stanley gate. On September 10, 1994, the agents observed and followed an Army van allegedly used to transport stolen meat. The agents then made a lawful stop of the van, which appellant was driving. SA McGwire, while approaching the van, observed some meat in plain view inside the van. He subsequently apprehended appellant for larceny and seized ten boxes of frozen meat from the van. Thus, appellant was caught with the stolen items as a result of a tip and surveillance *before* he made the incriminating statements that the military judge suppressed. Accordingly, the decision to prosecute appellant and critical evidence against him were not tainted by the statements he provided to investigative authorities.

Next, appellant contends that the testimony of his co-conspirator, SFC Stroup, was tainted because ·appellant implicated SFC Stroup in the statements which the military judge suppressed. I again disagree. The record shows that SFC Stroup was implicated in the criminal enterprise before appellant revealed his conspiracy with Stroup to CID. According to the testimony of SA McGwire, he was contacted on July 29, 1994, by Mr. Woytaszek, the security officer for the Defense Commissary Agency in Yongsan. Mr. Woytaszek informed SA McGwire that he had received a tip alleging that SFC Stroup was involved in a conspiracy with appellant to steal meat from the commissary and sell it to unidentified Korean Nationals. The information was then confirmed by a cashier at the commissary. SFC Stroup's identity as a participant in a conspiracy with appellant was thus known to CID independent of appellant's excluded statements. Accordingly, I would hold that SFC Stroup's testimony was not tainted.

In light of the foregoing, I concur in the result to affirm.