**UNITED STATES, Appellee,**

v.

**Stanley E. ALLEN, Staff Sergeant, U. S. Army, Appellant.**

**No. 34,660.**

**CM 434557.**

U. S. Court of Military Appeals.

Oct. 1, 1979.

For Appellant: *Captain Kevin E. O'Brien* (argued); *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain D. David Hostler, Captain John H. Milne* (on brief); *Colonel Edward S. Adamkewicz, Jr., Lieutenant Colonel John R. Thornock, Captain Steven J. McAuliffe.*

For Appellee: *Captain Glen D. Lause* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller, Major Steven M. Werner* (on brief).

Opinion of the Court

FLETCHER, Chief Judge:

This case involves a conviction of attempted rape and oral and anal sodomy.[1]

---

1. Appellant, in a general court-martial with members, was convicted, contrary to his pleas, of attempted rape under Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880, and 2

At the request of the treating doctor certain specimens were taken for laboratory analysis during the examination of the victim. The evaluation reports of these samples were offered by the prosecution and admitted by the court as business record exceptions to the hearsay rule. We are called upon to answer whether it was prejudicial error to admit these exhibits as evidence of the truth of the matters stated therein, over the objection made by the defense counsel. We find that it was error to have admitted these exhibits. However, in this case we find it was not prejudicial error, because the information contained in the reports was admissible under an evidentiary rule allowing an expert's opinion based on the reports of others. As the expert in this case testified concerning the subject of the reports based both on them and his personal examination, the exhibits were merely cumulative.

Thus, the resolution of this controversy depends on the propriety of expert testimony based on reports of others. Turning to paragraph 138e, Manual for Courts-Martial, United States, 1969 (Revised edition), we see that it provides:

> Expert testimony may be adduced in several ways. An expert witness may be asked to state his relevant opinion shown to have been based on his personal observation or on an examination or study conducted by him, including an examination or study by him of reports of others of a kind customarily considered in the practice of the expert's specialty, without introducing in evidence or specifying hypothetically or otherwise in the question the particular data upon which the opinion was based and without showing the details of the expert's observation, examination, or study.

■ It can be seen that this provision allows expert opinion based upon information supplied from other sources in addition to his personal observation and examination. In keeping with the contemporary view,[2] we believe this manual provision includes a diagnosing or treating doctor who gives his opinion based upon the reports and opinions from technicians and other doctors. This is particularly true where the treating doctor orders the report, test, or analysis. The samples scrutinized here were taken under the direction of the physician while examining the victim.

Rule 703 of the Federal Rules of Evidence provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The advisory committee's note[3] to this section provides the rationale to support this broad concept.

> The third source contemplated by the rule consists of presentation of data to the expert outside of court and other than by his own perception. In this respect the rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes

---

specifications of oral and anal sodomy by force, contrary to Article 125, UCMJ, 10 U.S.C. § 925.

2. *See United States v. Williams*, 447 F.2d 1285 (5th Cir. 1971) (en banc), *cert.* denied, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972); *Jenkins v. United States*, 113 U.S.App.D.C. 300, 307 F.2d 637 (D.C.Cir.1962) (en banc).

3. 28 U.S.C.A., Fed.R.Evid., p. 504.

life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes. ■ Believing that this explanation is compatible with the Manual statement, we adopt the advisory committee's statement of reasons. An equally persuasive concept which had salience to our resolution of this matter is that the overwhelming evidence supports the guilty verdict, without consideration of the contested exhibits. In *United States v. Ward*, 1 M.J. 176, 180 (C.M.A. 1975), this Court said "we . . . hold that before an error founded solely upon the federal constitution can be held harmless under Article 59(a) [Uniform Code of Military Justice, 10 U.S.C. § 859(a)], the court must be able to declare a belief that it was harmless beyond a reasonable doubt." We so find.[4]

The evidence included not only the testimony of the victim, but other witnesses who described the circumstances before and after the incident. Coupled with the detailed testimony of the examining physician concerning the condition of the victim at the time of the examination in the early morning hours after the incident, there is no reasonable possibility that the evidence in question contributed to the appellant's conviction.

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.*

4. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Bumper v. State of North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and *Fahy v. State of Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

COOK, Judge (concurring in the result):

The exhibits in issue were identified as being part of the victim's "Clinical Record—Laboratory Report Display" and were taken from her "official" Military Health Records at Kemen Army Hospital, Fort Lee, Virginia. They were reports on matter taken from the victim, as a patient, by Kemen Hospital personnel, and forwarded to the laboratory of another hospital for examination or testing, as the matter required. Each report bore a legend that it was a "Standard Form," with a number, date and department, such as "Serology" or "Chemistry I"; all were further referenced to "GSA FPMR 101–11.8." I believe the trial court could properly note that the letters "GSA" identify the General Services Administration of the United States Government. *See United States v. Rollins*, 7 M.J. 125 (C.M.A.1979). Use of a standard form approved by GSA is "mandatory" under the Standard and Optional Forms Program, 41 C.F.R. §§ 101–11.800, 101–11.802–2. The import of a standard form is that it is required and used during the regular course of operations at the government facility which records the information set forth. I am satisfied, therefore, that the exhibits were properly admitted into evidence under paragraph 144 of the Manual for Courts-Martial, United States, 1969 (Revised edition). Consequently, I join in affirming the decision of the United States Army Court of Military Review.