# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**JEREMY R. GREEN**
**AVIATION ELECTRICIAN'S MATE AIRMAN (E-3), U.S. NAVY**

**NMCCA 201300276**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 7 March 2013.
**Military Judge:** CAPT Kevin O'Neil, JAGC, USN.
**Convening Authority:** Commanding Officer, Naval Air Station, Lemoore, CA.
**Staff Judge Advocate's Recommendation:** LT D.A. Christenson, JAGC, USN.
**For Appellant:** LT Carrie Theis, JAGC, USN.
**For Appellee:** Maj David Roberts, USMC.

**31 July 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

WARD, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant pursuant to his pleas of wrongful appropriation and communicating indecent language in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 934. The military judge also convicted the appellant, contrary to his pleas, of one specification of rape of a child, two specifications of aggravated sexual contact with

a child, and two specifications of sodomy with a child in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920 and 934. The military judge sentenced the appellant to confinement for 140 months, reduction to pay grade E-1 and a dishonorable discharge. The convening authority approved the sentence as adjudged and, in accordance with the pretrial agreement, waived automatic forfeitures of pay and allowances for the benefit of the appellant's family members. With the exception of the punitive discharge, the convening authority ordered the sentence executed.[1]

On appeal, the appellant raises the following assignments of error:

1) That the military judge erred in denying the appellant's motion to suppress his confession;

2) That the military judge erred in his special findings under RULE FOR COURTS-MARTIAL 918(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.);

3) That the appellant's convictions for rape of a child, aggravated sexual contact of a child and sodomy with a child are legally and factually insufficient;

4) That the appellant's guilty plea to wrongful appropriation is improvident; and

5) That the appellant's guilty plea to communicating indecent language is improvident.[2]

Having carefully considered the record of trial, the parties' pleadings and oral argument, we conclude that the findings and sentence are correct in law and fact and no error materially prejudicial to a substantial right of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

---

[1] We note that the Convening Authority's action, General Court-Martial Order No. 1-13, incorrectly lists the finding for Charge I, Specification 4 as guilty when in fact the military judge found the appellant not guilty of this offense. Record at 272. We will order corrective action in our decretal paragraph.

[2] We have reviewed assignments of error 2 – 5 and find them without merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992).

**Factual Background**

The charges and specifications stem from a pattern of sexual abuse committed by the appellant against his then two-and-a-half year old daughter and his infant son.  This occurred between May and July 2011, shortly before the appellant deployed in late July 2011.  It was also during this time that the appellant's wife noticed a change in the appellant's behavior as he displayed a new interest in caring for his children.  With a toddler and a newborn, she welcomed her husband's involvement and sharing of parental care.  Unbeknownst to her, it was during this period that the appellant sexually abused their children upstairs in their home after giving one a bath or changing a diaper.  Each time he did this his wife would either be in the shower, taking a nap, or downstairs with the other child.

After the appellant began taking on more responsibilities for the children, his wife began noticing some changes in her daughter.  She noticed her daughter having more frequent urination accidents, something that surprised her since the daughter had been potty-trained by that time for several months.

As the appellant prepared to deploy in late July, his wife began to suspect him of having an affair.  After he deployed, she left him and took both children back to her hometown.  Using his password, she hacked into her husband's email account and discovered links to a Facebook profile name of "Bobby Warren".  When she looked up the profile of "Bobby Warren", she discovered her husband's picture and several disturbing posted comments.  One post in particular concerned her because "Bobby Warren" seemingly expressed an interest in incest.  Alarmed, she contacted a family friend and local police for assistance.  Ultimately, she reported her suspicions to agents from the Naval Criminal Investigative Service (NCIS).

Soon thereafter NCIS agents initiated an investigation.  With only the generalized information provided by the appellant's wife, consisting primarily of the "Bobby Warren" Facebook posts, agents had little to go on before they interrogated the appellant.[3]  However, in a series of interviews with NCIS investigators, the appellant described in detail numerous instances of sexually abusing his children.

---

[3] A forensic examination of the daughter found no physical evidence of sexual trauma.  Appellate Exhibit XXI.  Additionally, a forensic interview of her was inconclusive.  AE XXIII.

Prior to trial, the appellant sought to suppress his confession arguing that the Government lacked sufficient independent corroboration. After taking testimony from several witnesses and reviewing documentary exhibits, the military judge denied the motion after finding that four items of evidence proffered by the Government adequately corroborated the appellant's confession.[4]

## Corroboration of the Appellant's Confession

In his ruling, the military judge relied on the following to conclude that the appellant's confession was sufficiently corroborated:

1) The appellant's uncharacteristic interest in bathing his daughter and son as described by the appellant's wife;

2) Independent evidence that the appellant accessed the website "literotica";

3) Independent evidence of the appellant's postings under the Facebook pseudonym "Bobby Warren"; and

4) Evidence that the daughter's regression in potty training could be caused by sexual abuse.[5]

Appellate Exhibit XVI at 9-10.

We review a military judge's ruling that a confession is sufficiently corroborated for an abuse of discretion. *United States v. Seay*, 60 M.J. 73, 77 (C.A.A.F. 2004). "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citation omitted). This standard envisions that "a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Id.* (citations and internal quotation marks omitted).

---

[4] AE XVI.

[5] Contrary to the appellant's argument, we find no clear error in the military judge's factual findings as to this evidence and we find no merit to the appellant's argument that the military judge improperly combined this item of evidence with other independent evidence to conclude that the appellant's confession was adequately corroborated. Appellant's Brief of 18 Oct 2013 at 32.

4

Originally from common law, the independent corroboration rule acted as a bulwark against the danger of false or coerced confessions. *Opper v. United States*, 348 U.S. 84, 89-90 (1954). In *Opper*, the Supreme Court extended the common law corroboration requirement beyond confessions to "admissions of essential facts or elements of the crime, subsequent to the crime" even where those admissions were intended to be exculpatory in nature. *Opper*, 348 U.S. at 90-92. The only exception, the Court found, was statements "immaterial as to guilt or innocence." *Id*. at 91.

As to the relationship between corroboration and the admissions or confessions, the Court held that the Government "must introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. . . . [but that] [i]t is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id*. at 93.[6] That same year the Supreme Court held that the "substantial independent evidence" can establish the trustworthiness of the statement even if it only relates to one element of the crime, or if it simply bolsters the trustworthiness of the confession alone without relating to any element of the confessed to crime. *See Smith v. United States*, 348 U.S. 147, 156 (1954) ("[O]ne available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." (Citation omitted)).

The military rule on corroboration has long followed the same non-*corpus delicti* approach embraced in *Opper*.[7] The current rule, MILITARY RULE OF EVIDENCE 304(g), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) provides that:

---

[6] In *Opper*, the Supreme Court rejected the "*corpus delicti*" rule previously adopted in some federal and state courts whereby a suspect's confession must be corroborated by facts that establish the corpus or the entirety of the crime.

[7] *Compare* MANUAL FOR COURTS-MARTIAL, App. 22, at A22-13 (2012 ed.) with MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1951, ¶ 140a, at 251-52. Our superior court has long embraced the non-*corpus delicti* rule as well. *See, e.g., United States v. Maio*, 34 M.J. 215, 218 (C.M.A. 1992) (explicitly rejecting the *corpus delicti* rule, instead relying on the trustworthiness of the confession); *United States v. Rounds*, 30 M.J. 76, 80 (C.M.A. 1990) (finding that independent proof of each element not required, independent evidence must only raise inference of truth as to essential facts stated in confession).

An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

The quantum of independent evidence necessary to corroborate a confession is "very low" as it "must raise only an inference of truth as to the essential facts admitted." *Seay*, 60 M.J. at 79-80.

We now turn to the four items of evidence cited by the military judge as sufficient corroboration under MIL. R. EVID. 304(g).

**1. The appellant's uncharacteristic interest in bathing his children**

The appellant first takes issue with the military judge's finding that the appellant's "uncharacteristic"[8] interest in bathing his children served as independent evidence corroborating the truthfulness of his confession. Likening his case to *United States v. Faciane*, 40 M.J. 399 (C.M.A. 1994), the appellant argues that normal parental access even when combined with bizarre behavior by a child is insufficient to corroborate a father's confession to acts of child sexual abuse. Appellant's Brief of 18 Oct 2013 at 16-17.

As the appellant correctly notes, our superior court held in *Faciane* that a father's exclusive visitation was insufficient to corroborate his later confession to acts of molestation. However, the appellant's behavior as described by his wife went well beyond what was at issue in *Faciane*. Here, the military judge focused more so on the uncharacteristic interest the appellant displayed in bathing his daughter, something his wife noticed at the time. Despite his sudden willingness to bathe his daughter and ready her for bed, as many as four to five nights a week, the appellant's wife testified that the appellant still remained largely uninterested in any other parental responsibilities or care. Record at 40-43; 166-67. Furthermore, the appellant admitted during his interrogation that he always committed these acts on his daughter in her room

---

[8] AE XVI at 7.

6

following her bath while his wife was either in the shower or downstairs with their son.  Prosecution Exhibits 7 and 9.

The nature of this interaction as described during the appellant's confession coincides with the uncharacteristic interest the appellant displayed with his daughter as described by his wife.  Like the military judge, we find that this specific access, combined with the uncharacteristic interest displayed by the appellant, corroborated some of the essential facts of his confession.[9]

### 2. Independent evidence that the appellant accessed the website "literotica"

During his first interrogation,[10] the appellant described how he first sexually abused his daughter after reading stories of incest on the website "literotica" and becoming curious.  PE 7.  An hour later into the interrogation, he recounted how after reading these stories online from his smart phone he thought about creating his own story.  *Id*.  Near the end of the interrogation that day, he referenced the website again, commenting that the stories were "pretty explicit" and ultimately led him to sexually abusing his children.  *Id*.

The following day, NCIS agents again interrogated the appellant concerning the details he previously provided.  The appellant again explained that after reading the material on this website, and then bathing his daughter, "something clicked."  PE 9.

---

[9] The appellant also takes issue with the military judge's finding that "[i]n May 2011, the [appellant] extended his assistance to bathing his son."  AE XVI at 4.  The appellant's wife testified that during this time of displaying an interest in bathing her daughter, the appellant would also offer to watch her son while she took a nap.  Record at 42.  As the appellant correctly notes, his wife did not testify that the appellant similarly took his son upstairs to bathe him.  We agree that this portion of the military judge's finding was clearly erroneous as it was unsupported by the record.  However, as described below, we conclude that the balance of the remaining corroborative facts as cited by the military judge "tend[ed] to establish the trustworthiness" of the appellant's statements in his confession concerning both children.  *Opper*, 348 U.S. at 93; *see also Wong Sun v. United States*, 371 U.S. 471, 489 (1963) (holding that "extrinsic proof" is sufficient if it "'merely fortifies the truth of the confession, without independently establishing the crime charged.'" (quoting *Smith*, 348 U.S. at 156)).

[10] The appellant returned from deployment in late February 2012.  NCIS agents interrogated him on 6 and 7 March 2012, and again on 2 April 2012.  PE 4-7, 9 and 10.

On appeal, the appellant argues first that this website is not an essential fact to his confession.  Alternatively, he argues that it is too attenuated since the forensic evidence only indicates that he visited the website in March 2012, approximately eight months after his offenses.  We disagree with both contentions.

As to his first contention, no one was aware of the website's existence until he volunteered the name.  Considering that, in his own words, this website and its content "led" to his crimes, we reject the notion that this website and the role it played are not essential facts of his confession.  Were we to accept the premise to the appellant's argument, then independent evidence of confessed facts falling short of an element, such as motive, access, and opportunity, could never corroborate a confession – a premise rejected by the Supreme Court sixty years ago in *Opper* and *Smith*.[11]  We decline to adopt this repackaging of the *corpus delicti* rule.

The appellant's second argument focuses on the lack of temporal proximity between the forensic evidence recovered from his phone and the facts of his confession.  Even with the lack of proximity, at a basic level confirmation of this website and filename suggestive of incest creates some inference of truth to these related facts in his confession.  Lack of temporal proximity may influence the weight to be given, but it does not exclude this fact as irrelevant as the appellant argues.  To the contrary, we find it is a factor in evaluating the inferential weight to this evidence.  *See United States v. Cravens*, 56 M.J. 370, 376 (C.A.A.F. 2002) (finding scientific test establishing drug use at some point within a four to five month period preceding admitted use sufficiently "proximate in time" to corroborate admitted use); *United States v. Hall*, 50 M.J. 247, 252 (C.A.A.F. 1999) (finding evidence of drug use occurring three months after confessed use was still corroborative of confession).

**3. Independent evidence of the appellant's postings under the Facebook pseudonym "Bobby Warren"**

At trial, the parties stipulated that under the Facebook pseudonym "Bobby Warren" the appellant posted the following

---

[11] *See also United States v. Baldwin*, 54 M.J. 464, 466 (C.A.A.F. 2001) (finding father's unexplained presence in daughter's bedroom and visit to the chaplain two days later were corroborative of essential facts to confessed sexual abuse); *Maio*, 34 M.J. at 219 (finding access to drugs during time in question was corroborative of confessed drug use).

8

comments:

> "I am feeling very horny right about now.  Could use some young pink p****.  mmmm" posted 3 February 2011; and

> "I WANT SOME P****. SOME YOUNG JUICY P****" posted on 4 July 2011.

PE 1 at 2.  During the motion hearing and at trial, the Government introduced additional evidence that "Bobby Warren" also posted the following comment on 4 July 2011: "does anyone on here like incest?"  PE 2 at 5.  The military judge concluded that the two comments posted on 4 July 2011 "expresses an implied desire for sexual contact with young females" and therefore "in combination with the [other corroborative evidence] support[s] an even stronger inference of truth to the [appellant's] admissions."  AE XVI at 8-9 (footnote omitted).

The appellant challenges the military judge's above conclusion on three bases: 1) that under MIL. R. EVID. 304(g) these Facebook posts amount to separate admissions that themselves require corroboration and therefore cannot be used to corroborate his confession; 2) that these comments are inadmissible under MIL. R. EVID. 304(g) because they do not amount to essential facts of his confession; and 3) that these comments are inadmissible under MIL. R. EVID. 404(b).[12]

MIL. R. EVID. 304(g) provides in pertinent part: "Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence."  Subparagraph (c)(2) of the rule defines an admission as "a self-incriminating statement falling short of an acknowledgement of guilt, even if it was intended by its maker to be exculpatory."  This language tracks the *Opper* holding extending the corroboration requirement to admissions falling short of a full confession.[13]

---

[12] Because we find no merit in these latter two arguments, we address only the first.

[13] "We think that an accused's admissions of essential facts or elements of the crime, subsequent to the crime, are of the same character as confessions and that corroboration should be required."  *Opper*, 348 U.S. at 90 (citations omitted).

More importantly, however, *Opper* only envisions statements made by an accused while under suspicion of the confessed to offense.[14]  We find no such circumstances here.  The appellant posted these comments months before anyone suspected him of any offense, and we find no circumstances of police coercion or other dangers of false confession present.[15]  Moreover, nowhere in these posts is there an "admission of one of the formal 'elements' . . . or of a fact subsidiary to the proof of [an] 'element[]'" to the confessed crime.  *Smith*, 348 U.S. at 155. We find therefore that these posts were available as independent corroboration under MIL. R. EVID. 304(g) and *Opper*.

### Conclusion

Consequently, we find no error by the military judge in concluding that the aforementioned independent evidence sufficiently corroborated the appellant's confession because it "fortif[ied] the truth of the confession, [despite not] independently establishing the crime charged."  *Wong Sun*, 371 U.S. at 189 (citation, internal quotation marks and footnote omitted).

The supplemental court-martial order will reflect a finding of Not Guilty for Charge I, Specification 4.  The findings and sentence as approved by the convening authority and corrected herein are affirmed.

Senior Judge MCFARLANE and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[14] "We conclude that exculpatory statements, however, may not differ from other admissions of incriminating facts.  Given when the accused *is under suspicion*, they become questionable just as testimony by witnesses to other extrajudicial statements of the accused."  *Id*. at 92 (emphasis added).

[15] Based on his review of the appellant's confession and his own forensic evaluation, Dr. Rex Frank, a forensic psychologist retained by the defense, found no evidence of coercion by NCIS interrogators and concluded that "[d]ata reviewed did not support the elicitation of a false internalized or false compliant confession . . . in response to [the appellant's] interrogation by NCIS Agents [however] [t]he evaluation did not exclude the possibility of a voluntary false confession."  Defense Exhibit A at 27.